Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

FILED ___ LODGED
___ RECEIVED ___ COPY

SEP 20 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews,<br><br>Plaintiff,<br><br>vs.<br><br>Move, Inc.,<br>National Van Lines, Inc.,<br>Watson Moving and Storage, LLC,<br>AND Moving Solutions, Inc.<br><br>Defendants. | Case No.: CV24-02497-PHX-MTL<br><br>Complaint for Violations of:<br>1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br>2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br><br>DEMAND FOR JURY TRIAL |

///
COMPLAINT- 1

## COMPLAINT

### Preliminary Statement

1. "When it comes to robocalls, you can only call those who, like Blondie, have said, "Call me. Call me on the line." If you call people who haven't opted in, then you face liability under the Telephone Communications Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024).

2. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The Defendants in this action, Move, Inc., National Van Lines, Inc., Watson Moving and Storage, LLC, and Moving Solutions, Inc., orchestrated placing at least ten (10) illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service that was included on the national Do-Not-Call List.

4. Plaintiff never consented to receive such messages.

### Parties

5. Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona, at all relevant times and a resident of this District.

6. Defendant Move, Inc. ("Move"), incorporated in California, doing business as Move.com.

7. Defendant National Van Lines, Inc. ("National"), incorporated in Colorado, is in the business of offering residential moving services throughout the United States.

8. Defendant Watson Moving and Storage, LLC ("Lifetime"), incorporated in Arizona, is doing business as Lifetime Moving & Storage and is in the business of offering residential moving services throughout the United States.

9. Defendant Moving Solutions, Inc. ("U-PACK"), incorporated in Arkansas, doing business as U-PACK, is in the business of offering residential moving services throughout the United States.

COMPLAINT- 2

## Jurisdiction & Venue

10. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has specific personal jurisdiction over the Defendants because the defendants caused the events complained herein to occur in Arizona, out of which the TCPA claims arose, and the defendants had minimum contacts with Arizona to justify assertion by an Arizona court of personal jurisdiction, *Meyers v. Hamilton Corp.*, 693 P.2d 904 (Ariz. 1985). Defendants intentionally called or caused Plaintiff's number to be called by dialing an Arizona area code at least ten (10) times within a twelve-month period to advertise their services despite Plaintiff's number being listed on the national do not call registry in violation of the TCPA.

## Venue

12. The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## Factual Allegations

14. Plaintiff had no prior business relationship with Defendants.
15. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).
16. Defendant Move is a "person" as defined by 47 U.S.C. § 153(39).
17. Defendant National is a "person" as defined by 47 U.S.C. § 153(39).
18. Defendant Lifetime is a "person" as defined by 47 U.S.C. § 153(39).
19. Defendant U-PACK is a "person" as defined by 47 U.S.C. § 153(39).
20. The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

COMPLAINT- 3

21. The Cell Number has been on the Do-Not-Call registry since November 7, 2006.

22. Despite this registration, Defendants placed the calls summarized in the following table.

| Date | Time | Caller ID |
| --- | --- | --- |
| 8/15/2024 | 7:59 am | (516) 344-9896 |
| 8/15/2024 | 8:01 am | (708) 686-2152 |
| 8/15/2024 | 8:02 am | (708) 686-2152 |
| 8/15/2024 | 8:04 am | (602) 344-9132 |
| 8/15/2024 | 8:38 am | (602) 344-9896 |
| 8/15/2024 | 10:31 am | (602) 344-9896 |
| 8/15/2024 | 1:02 pm | (708) 450-2990 |
| 8/16/2024 | 9:31 am | (888) 571-7422 |
| 8/16/2024 | 11:02 am | (602)344-9896 |
| 8/16/2024 | 11:34am | (305) 405-8090 |

23. The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

24. Plaintiff did not consent to receive telephone calls via ATDS.

25. The Cell Number is not associated with a business.

Calls to Plaintiff

26. Beginning on or about August 15, 2024, at 7:59 a.m., Plaintiff began receiving phone calls asking for "Ronald" and soliciting their services for an upcoming move to North Carolina.

27. Plaintiff does not know or has ever been identified by the name Ronald.

28. Plaintiff has lived in Arizona since 1998, is fond of his residence and his State and does not nor has he ever entertained a move to North Carolina.

29. Plaintiff does not know a Ronald.

30. Plaintiff does not know anyone who is planning a move to North Carolina.

31. The calls received at 7:59 a.m., 8:01 a.m., 8:02 a.m., and 1:02 p.m. on August 15, 2024, and 11:34 a.m. on August 16, 2024, identified "National Van lines."

COMPLAINT- 4

32. During one of the calls, Plaintiff spoke with an individual who identified themselves as Gina, who asked for Ronald and stated she had received Plaintiff's phone number from Move.com.

33. The calls received at 8:04 a.m., 8:38 a.m., and 10:31 a.m. on August 15, 2024, and 11:02 a.m. on August 16, 2024, identified "Lifetime Moving."

34. During one of those calls, Plaintiff spoke with an individual who asked for Ronald and stated they had received Plaintiff's phone number from Move.com.

35. The call at 11:34 am on August 16, 2024, identified "U-Pack".

36. During that phone call, Plaintiff spoke with an individual who asked for Ronald and stated they had received Plaintiff's phone number from Move.com.

### Defendants' Conduct Was Knowing and Willing

37. Defendants intentionally called Plaintiff multiple times to advertise their services to Plaintiff.

38. Defendants knew their actions were in violation of the TCPA and willfully continued their conduct, calling Plaintiff multiple times despite his number being registered on the National Do-Not-Call List.

### Vicarious Liability

39. Defendant Move through their authorized representatives National, Lifetime, and U-PACK made multiple illegal calls to Plaintiff.

40. Defendant Move sold Plaintiff's telephone number to Defendants National, Lifetime, and U-PACK for the sole purpose of telemarketing.

41. National, Lifetime, and U-PACK used utilized software provided by Move.

42. National, Lifetime, and U-PACK used proprietary information and systems provided by Defendant Move.

43. Move authorized National, Lifetime, and U-PACK to make the phone calls on the issue here.

44. Move encouraged the phone calls being made by National, Lifetime, and U-PACK.

COMPLAINT- 5

45. Move gave access to their proprietary systems and software to Defendant National, Lifetime, and U-PACK.

46. Move has been aware of the fraudulent opt-in leads and has ratified the behavior of National, Lifetime, and U-PACK, the salespeople responsible for the violations, by continuing to accept referrals and sell them for the purposes of telemarketing despite the knowledge of the violations and without taking measures to ensure leads were properly verified and scrubbed against the National Do-Not-Call List.

47. Move has made fraudulent opt-ins a regular source of referrals.

48. A defendant may be held vicariously liable for Telephone Consumer Protection Act (TCPA) violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(2). *Gomez v. Campbell-Ewald Co.*, 768 F.3d 872, 11 (9th Cir. 2014).

### The TCPA Prohibits All Automated Calls to Protected Numbers

49. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

50. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

51. According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or

COMPLAINT- 6

prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly and are inconvenient.

52. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

53. These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

54. "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

55. U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person...": U.S.C. § 227(f)(15).

56. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

57. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:
> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive

COMPLAINT- 7

future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

58. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

59. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may ... [e]xcept as provided ... initiate any telephone call ... using an automatic telephone dialing system or an artificial or prerecorded voice."

60. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described... "

61. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

62. A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator": *Id.*

63. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

COMPLAINT- 8

64. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

65. Plaintiff incorporates the foregoing allegations as fully set forth herein.

66. Defendants called Plaintiff's private residential telephone number which was registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

67. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

COMPLAINT- 9

68. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

69. Defendants' violations were willful and/or knowing.

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

B. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this September 16, 2024.

_____
Jason Crews

COMPLAINT- 10